IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

    Plaintiff,

v.

DILLON COMPANIES, INC., d/b/a KING SOOPERS, INC.

    Defendant.

## COMPLAINT AND JURY TRIAL DEMAND

This is an action under Titles I and V of the Americans with Disabilities Act of 1990, as amended, incorporating by reference Title VII of the Civil Rights Act of 1964, as amended, and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of disability and to provide appropriate relief to Kelly Ferris who was adversely affected by such practices. Plaintiff Equal Employment Opportunity Commission ("Plaintiff," "EEOC," or "Commission") alleges that Defendant Dillon Companies, Inc. d/b/a King Soopers, Inc ("Defendant," "Employer," or "King Soopers") unlawfully discriminated against Ferris when it discharged her because she was disabled or because Defendant regarded her as disabled, and/or because of the need to provide reasonable accommodation for her disability. The EEOC further alleges that Defendant violated the ADA, as amended, when it failed to reasonably accommodate

Ferris despite her requests, and by unlawfully discharging Ferris in retaliation for her attempt to use an accommodation.

**JURISDICTION AND VENUE**

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 107(a) of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12117(a), as amended, which incorporates by reference Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-5(f)(1) and (3), and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981(a).

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of Colorado.

**PARTIES**

3. Plaintiff EEOC is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title I of the ADA, and is expressly authorized to bring this action by Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1).

4.  At all relevant times, Defendant King Soopers , a Colorado corporation and a wholly owned subsidiary of Dillon Companies, Inc., a Kansas Corporation, has continuously been doing business in the State of Colorado and the City of Denver, and has continuously had at least fifteen (15) employees.

5.  At all relevant times, Defendant King Soopers has continuously been an employer engaged in an industry affecting commerce under Section 101(5) of the ADA, 42 U.S.C.§ 12111(5), and Section 101(7) of the ADA, 42 U.S.C. § 12111(7), which incorporates by reference Sections 701(g) and (h) of Title VII, 42 U.S.C. §§ 2000e(g) and (h).

6.  At all relevant times, Defendant King Soopers has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

## **STATEMENT OF CLAIMS**

7.  More than thirty days prior to the institution of this lawsuit, Kelly Ferris filed a charge with the Commission alleging that Defendant Employer violated Title I and V of the ADA.

8.  The Colorado Civil Rights Division ("CCRD") and EEOC each provided Defendant with notice of the charges of discrimination.

9.  CCRD and EEOC each investigated the charge of discrimination.

10. Based on evidence adduced during the agencies' two investigations, EEOC issued a determination finding reasonable cause to believe that Defendant had engaged in certain unlawful employment practices identified in the determination.

11. The Commission's determination included an invitation for Defendant to join the Commission in informal methods of conference, conciliation, and persuasion in an attempt to eliminate and remedy the alleged unlawful employment practices.

12. On September 19, 2011, Defendant notified the Commission in writing that it did not wish to engage in conciliation.

13. All conditions precedent to the institution of this lawsuit have been fulfilled.

14. Charging Party Kelly Ferris suffers from chronic, moderate-to-severe bipolar disorder.

15. Ferris takes daily medications to manage the symptoms of her bipolar disorder.

16. Bipolar disorder impacts a number of Ferris' life activities including, but not limited to: cognition, memory, coping, daily functionality, work, social and familial interactions, motivation, decision-making, self-care, grooming, and household chores.

17. A psychiatrist has regularly been monitoring Ferris' mental health since the 1990s.

18. Defendant hired Ferris on October 6, 2003, as a Receptionist at its main offices.

19. Ferris worked in a facility located on Tejon Street in Denver, Colorado.

20. Throughout her employment, Defendant's managers evaluated Ferris' job performance as satisfactory or above.

21. In a February 2007 performance evaluation, Ferris' performance was rated "above average," with a score of 35 on a scale where 25 to 36 is "above average" and 37 and above is considered "outstanding."

22. In a September 2008 performance evaluation (using a different scoring mechanism than the 2007 evaluation), Ferris scored 4 or 5 in every category, on a scale of 1 to 5, with 5 being highest possible score.

23. The September 2008 evaluation is the last evaluation of Ferris' job performance.

24. In a letter to Frank Romero, Director, Grocery Buying Department, dated November 29, 2009, Ferris requested a family medical leave of absence and, upon her return, a transfer to a less public position as reasonable accommodations for her disability.

25. In her November 29, 2009, letter, Ferris disclosed to Defendant the following information about her medical condition:

    a. that she had been under the care of psychiatrists since the 1990's;

    b. that she was then experiencing a recurrence of a "Mental Health and Neurological Disorder"; and

    c. that she was then under the care of Dr. Joseph Mendozza, a psychiatrist.

26. On November 30, 2009, one day after Ferris requested family medical leave and disclosed the nature of her disability, King Soopers issued Ferris a five- (5-) day suspension for allegedly leaving the building without notifying someone and without putting her telephone on "busy."

27. On December 10, 2009, Dr. Mendozza signed the physician's statement portion of three forms:

    a. a medical leave request form;

    b. a form requesting leave of absence under the Family Medical Leave Act; and

    c. a form titled "Weekly Disability Claim Form."

28. On December 11, 2009, Ferris completed and signed the employee portion of the three forms completed by Dr. Mendozza.

29. On December 11, 2009, King Soopers Manager L.M. Silvas completed and signed the manager's portion of the three forms completed by Dr. Mendozza and Ferris.

30. On the medical leave request form, both Ferris and Silvas initialed a box indicating the employee was to contact the manager on a monthly basis but no particular day of the month was specified.

31. In compliance with the requirement stated on the medical leave request form, Ferris submitted monthly medical documentation of her continued inability to work.

32. On January 12, 2010, Dr. Mendozza's office faxed a form signed by Dr. Mendozza to King Soopers indicating Ferris' continued inability to work.

33. On February 12, 2010, Dr. Mendozza's office faxed a form signed by Dr. Mendozza to King Soopers indicating Ferris' continued inability to work until "mid-March at the earliest."

34. By letter from Romero, dated February 22, 2010, Defendant notified Ferris that she was terminated for being absent without leave since February 9, 2010.

35. The termination letter was sent with a termination form indicating Ferris was terminated on February 12, 2010.

36. By letter to Romero, dated February 21, 2010, Ferris appealed her termination, stating that she saw the doctor on February 9, 2010, and understood the form was faxed that day.

37. In her February 21, 2010, letter, Ferris reiterated her desire to return to King Soopers in another position, as stated in her November 29, 2009, request for family medical leave.

38. By letter from Romero, date February 22, 2010, Defendant informed Ferris that her employment was reinstated as of February 22, 2010; that she was required to provide timely monthly updates; and that the next update was due March 22, 2010.

39. By e-mail from Romero, dated March 11, 2010, Defendant informed Ferris that the update previously set for March 22, 2010, needed to be completed earlier during the week of March 15th.

40. In a letter to Steve Marquez, Human Resources Department, dated March 17, 2010, Ferris asked, among other things, for:

    a. "Policy on Extension of Disability Leave;" and

    b. "Detailed information on policy regarding compliance with Kingsoopers [*sic*] Disability Leave (documentation, time requirements, who to contact, etc.) in order that *I may fulfill my compliance requirements in a timely manner*." (Emphasis in original.)

41. On March 18, 2010, Ferris and Dr. Mendozza signed another leave request form confirming Ferris' continued inability to work.

42. On March 19, 2010, Ferris's signed leave request form was hand-delivered to Defendant by Speedy Messenger.

43. On March 19, 2010, Defendant's manager signed the leave request form which Ferris and Dr. Mendozza had signed the previous day, March 18, 2010.

44. By letter dated March 19, 2010, from Marquez to Ferris, Defendant, among other things, provided the following description of its policy on extension of disability leave: "Must keep an update every 30 days for a maximum of 18 months excused leave," And "[c]ontact for Disability is your Location Manager; the location manager will keep in contact with Human Resources."

45. On or about March 22, 2010, Romero explained to Ferris that timely submission of monthly medical updates included a one-week grace period.

46. After learning that Defendant was interpreting its requirement of monthly updates to mean thirty (30) days, Ferris submitted updated medical information at least every thirty (30) days.

47. In a letter to Marquez, dated March 31, 2010, Ferris wrote, "[i]t would be helpful if you could let me know in advance the specific day my next paperwork for continuing Disability Leave is due," and "[t]hat way, I can schedule an appt. with my doctor and have the necessary paperwork completed and delivered to my supervisor in a timely manner and in accordance with Kingsoopers [*sic*] policy."

48. By letter dated April 2, 2010, Marquez provided Ferris a "new disability form" and wrote that "the next update is due on April 16, 2010," and "[p]lease send updated documentation to Frank's attention."

49. On April 15, 2010, Ferris' updated medical information was hand-delivered to Defendant by Speedy Messenger prior to the April 16th deadline and less than thirty (30) days after the previous submission on March 18, 2010.

50. Defendant did not inform Ferris of a precise date for when the May 2010 update was due.

51. On May 14, 2010, Ferris' updated medical information was hand-delivered to Defendant by Speedy Messenger.

52. May 14, 2010, was within thirty (30) days of the prior due date of April 16, 2010.

53. May 14, 2010, was within thirty (30) days of the prior submission on April 15, 2010.

54. In a letter dated May 18, 2010, Tom Lynch, acting for Romero, advised Ferris that she was terminated, effective May 18, 2010, for failure to provide updated medical information that was due on May 12, 2010.

55. When Romero made the termination decision, he saw, and Defendant had already received, a package from Ferris but Romero did not open the package to see if it contained Ferris' updated medical documentation.

56. Defendant never communicated to Ferris that it expected her next updated medical submission in May to be received by May 12, 2010.

57. Defendant unilaterally withdrew the reasonable accommodation of a medical leave of absence.

58. Before it withdrew the reasonable accommodation of a medical leave of absence, Defendant did not engage in an interactive process with Ferris.

## **FIRST CLAIM FOR RELIEF**

[Disability Discrimination -- 42 U.S.C. § 12112]

59. The allegations contained in the forgoing paragraphs are hereby incorporated by reference.

60. Since at least November 2009, Defendant engaged in unlawful employment practices in the State of Colorado, in violation of Section 102 of the ADA, as amended, 42 U.S.C. § 12112.

61. Defendant imposed unfair, unrealistic, and shifting conditions on Kelly Ferris for continuation of her family medical leave.

62. In February 2010, and again in May 2010, Defendant unlawfully discharged Kelly Ferris because she was disabled, and/or because Defendant regarded her as disabled, and/or because of the need to provide Ferris with a reasonable accommodation.

63. Defendant's stated reasons for terminating Ferris in February and May, 2010 – that it had not received paperwork verifying her continued inability to work on a timely basis – are untruthful.

64. Because of Ferris' disability and/or perceived disability, and/or the need to provide her with a reasonable accommodation, Defendant denied her the full benefit of medical leave to which she was entitled under Defendant's leave policies.

65. The effect of the practices complained of in the forgoing paragraphs has been to deprive Kelly Ferris of equal employment opportunities and otherwise adversely affect her status as an employee because of her disability.

66.     The unlawful employment practices complained of in the forgoing paragraphs were intentional.

67.     The unlawful employment practices complained of in the foregoing paragraphs were done with malice or with reckless indifference to the federally protected rights of Kelly Ferris.

## SECOND CLAIM FOR RELIEF

[Failure to Accommodate -- 42 U.S.C. § 12112]

68.     The allegations contained in the forgoing paragraphs are hereby incorporated by reference.

69.     Under Defendant's own policies, Ferris was entitled to family medical leave of up to eighteen (18) months, so long as she provided monthly updates of her medical status.

70.     Kelly Ferris completed all paperwork required by Defendant to initiate a family medical leave of absence in November 2009 and to renew the family medical leave of absence each month thereafter.

71.     Kelly Ferris fully complied with Defendant's requirement that she provide monthly updates of her medical status.

72.     Since at least May 2010, Defendant has denied Ferris reasonable accommodation of a continued family medical leave of absence for a reasonable time up to eighteen (18) months until she was able to return to work.

73.     Defendant did not engage in any interactive process with Ferris before it unilaterally withdrew the reasonable accommodation of a family medical leave of absence.

74. The effect of the practices complained of in the forgoing paragraphs has been to deprive Kelly Ferris of equal employment opportunities and otherwise adversely affect her status as an employee because of her disability.

75. The unlawful employment practices complained of in the forgoing paragraphs were intentional.

76. The unlawful employment practices complained of in the foregoing paragraphs were done with malice or with reckless indifference to the federally protected rights of Kelly Ferris.

### THIRD CLAIM FOR RELIEF

[Retaliation -- 42 U.S.C. § 12202]

77. The allegations contained in the forgoing paragraphs are hereby incorporated by reference.

78. Since at least November 2009, Defendant has engaged in unlawful employment practices in the State of Colorado, in violation of Section 502 of the Americans with Disabilities Act, incorporating Title VII, 42 U.S.C. § 2000e-3(a), by retaliating against Ferris for attempting to avail herself of a reasonable accommodation.

79. In February 2010, and again in May 2010, Defendant retaliated against Ferris by discharging her because she requested and required reasonable accommodation of a medical leave of absence.

80. The effect of the practices complained of in the forgoing paragraphs has been to deprive Kelly Ferris of equal employment opportunities and otherwise adversely affect her status as an employee because of her disability.

81. The unlawful employment practices complained of in the forgoing paragraphs were intentional.

82. The unlawful employment practices complained of in the foregoing paragraphs were done with malice or with reckless indifference to the federally protected rights of Kelly Ferris.

## **PRAYER FOR RELIEF**

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant Employer, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from engaging in unlawful conduct in violation of the ADA by subjecting individuals with mental illness disabilities to disparate terms and conditions of employment including unequal benefits, to harsher discipline, and to discriminatory discharge.

B. Grant a permanent injunction enjoining Defendant Employer, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from engaging in unlawful conduct in violation of the ADA by failing to reasonably accommodate individuals with mental illness disabilities.

C. Grant a permanent injunction enjoining Defendant Employer, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from engaging in unlawful conduct in violation of the ADA by retaliating against employees who request and/or attempt to use accommodation to retaliation.

D. Grant a permanent injunction enjoining Defendant Employer, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from engaging in unlawful conduct in violation of the ADA by failing to engage in the interactive process or failing to reasonably accommodate employees with mental illness disabilities.

E. Order Defendant Employer to institute and carry out policies, practices, and programs which provide equal employment opportunities for qualified individuals with disabilities, and which eradicate the effects of its past and present unlawful employment practices.

F. Order Defendant Employer to make whole Kelly Ferris by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to requiring reinstatement of Ferris.

G. Order Defendant Employer to make whole Kelly Ferris by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described in the forgoing paragraphs, including medical and job search expenses, in amounts to be determined at trial.

H. Order Defendant Employer to make whole Kelly Ferris by providing compensation for past and future non-pecuniary losses resulting from the unlawful practices complained of in the foregoing paragraphs, including emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation in amounts to be determined at trial.

I.  Order Defendant Employer to pay Kelly Ferris punitive damages for its malicious and reckless conduct, as described in the foregoing paragraphs, in amounts to be determined at trial.

J.  Grant such further relief as the Court deems necessary and proper in the public interest.

K.  Award the Commission its costs of this action.

## **JURY TRIAL DEMAND**

The Commission requests a jury trial on all questions of fact raised by its complaint.

Dated: September 14, 2012.

        RESPECTFULLY SUBMITTED,

        P. DAVID LOPEZ
        General Counsel

        GWENDOLYN REAMS
        Associate General Counsel

        EQUAL EMPLOYMENT
          OPPORTUNITY COMMISSION
        131 M Street N.E., 5TH Floor
        Washington, D.C. 20507-0004

        MARY JO O'NEILL
        Regional Attorney
        Phoenix District Office

        RITA BYRNES KITTLE
        Supervisory Trial Attorney

        /s/ D. Andrew Winston
        Senior Trial Attorney
        Telephone: 303.866.1361
        E-Mail: andrew.winston@eeoc.gov

        IRIS HALPERN
        Trial Attorney
        Telephone: 303.866.1374
        E-Mail: iris.halpern@eeoc.gov

        EQUAL EMPLOYMENT
          OPPORTUNITY COMMISSION
        Denver Field Office
        303 East 17th Avenue, Suite 410
        Denver, Colorado 80203

**PLEASE NOTE:**

**For purposes of service upon the EEOC, it is sufficient that pleadings, notices, and court documents be served upon the Trial Attorneys. Duplicate service is not required on the General Counsel and Associate General Counsel in Washington, D.C.**